## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS

**Robert Lee Cheeter**                                                                    **Plaintiff**

**v.**                                        **No. 4:15-CV–089-SWW-JTK**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                    **Defendant**

### Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge Susan W. Wright.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Wright may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2]*Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

Robert Lee Cheeter seeks judicial review of the denial of his third application for

supplemental security income (SSI).[3]  According to his earnings record, Cheeter was last

employed in 2005 as a floor technician.[4]  He applied for SSI on November 28, 2011.  This

date is important because a claimant isn't eligible for SSI before he applies.[5]  Cheeter

based disability on back pain.[6]

**The Commissioner's decision**.  After considering the application, the ALJ

identified degenerative disc disease of lumbar and thoracic spines, essential

hypertension, osteoarthritis, and depression as severe impairments.[7]  The ALJ

determined Cheeter can do some medium work, to include his past work as a sawmill

---

[3]SSA record at p. 119 (third application).  *See id*. at pp. 125 & 131 (indicating
Cheeter alleged disability beginning Jan. 1, 2007 in first application and beginning
Nov. 1, 2008 in second application; second application was denied on Sept. 10, 2008).

[4]*Id*. at p. 129.  Cheeter provided conflicting reports about his last employment.
*Id*. at p. 40 (last worked as floor technician in 2005), p. 134 (stopped working on Jan. 1,
2003), p. 135 (reporting last employment as floor technician through June 2007), p. 182
(worked as floor technician until he moved to Arkansas in 2006), p. 234 (hasn't worked
since 2004) & p. 245 (doesn't remember when he worked as floor technician).

[5] 20 C.F.R. § 416.335 ("When you file an application in the month that you meet
all the other requirements for eligibility [for SSI], the earliest month for which we can
pay you benefits is the month following the month you filed the application.").

[6]SSA record at p. 134.

[7]*Id*. at p. 23.

worker.  Because a person who can do his past work is not disabled,[8] the ALJ denied the

application.[9]

After the Appeals Council denied review,[10] the ALJ's decision became the

Commissioner's final decision for the purpose of judicial review.[11]  Cheeter filed this

case to challenge the decision.[12]  In reviewing the decision, the court must determine

whether substantial evidence supports the decision and whether the ALJ made a legal

error.[13]  This recommendation explains why substantial evidence supports the decision

and why the ALJ made no legal error.

**Cheeter's allegations**.  Cheeter challenges the determination that he can work.

---

[8]20 C.F.R. § 416.920(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").

[9]SSA record at pp. 29-30.

[10]*Id*. at p. 1.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[12]Docket entry # 1.

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

He says the ALJ should have discussed his first mental diagnostic exam.  He faults the

ALJ for focusing on his treatment history in evaluating his credibility.  He contends the

ALJ identified an incorrect job code for his past work.  He maintains circuit authority

requires the court to remand the case for a new hypothetical question.  For these

reasons, he argues, substantial evidence does not support the ALJ's decision.[14]

**Applicable legal principles**.  For substantial evidence to support the decision, a

reasonable mind must accept the evidence as adequate to show Cheeter can do

unskilled medium work.[15]  "Medium work involves lifting no more than 50 pounds at a

time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone

can do medium work, … he … can also do sedentary and light work."[16]  The ALJ

required incidental interpersonal contact, tasks learned and performed by rote with few

variables, little required judgment, and simple, direct, concrete supervision.[17]  For the

following reasons, a reasonable mind will accept the evidence as adequate to show

Cheeter can work within these requirements:

---

[14]Docket entry # 13.

[15]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[16]20 C.F.R. § 416.967.

[17]SSA record at p. 24.

1.  **Medical evidence establishes no disabling physical impairment**.  The
claimant bears the burden of proving he is disabled;[18] he must prove his
claim with medical evidence.[19]  Cheeter cannot show he is disabled
because he has no medical evidence of disabling symptoms.  The medical
evidence about his reason for disability — back pain — shows mild
degenerative changes in the spine.[20]  The descriptor "mild" suggest no
disabling symptoms.  Mild symptoms don't prevent medium work.

2.  **Cheeter sought little medical treatment**.  Cheeter faults the ALJ for
relying on his treatment history in evaluating his credibility.[21]  The ALJ
must evaluate the claimant's credibility before determining his ability to
work.[22]  The ALJ followed the required two-step process and considered
the required factors,[23] so the question before the court is whether
substantial evidence supports the ALJ's credibility evaluation.

------

[18]*Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992).

[19]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other
symptoms shall not alone be conclusive evidence of disability…; there must be medical
signs and findings, established by medically acceptable clinical or laboratory diagnostic
techniques, which show the existence of a medical impairment…which could
reasonably be expected to produce the pain or other symptoms alleged and
which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R.
§ 416.908 ("A physical or mental impairment must be established by medical evidence
consisting of signs, symptoms, and laboratory findings, not only by your statement of
symptoms.").

[20]SSA record at p. 201.

[21]*Id*. at p. 25 (stating, his "longitudinal medical history is not necessarily
consistent with his allegation of disability … due to back pain").

[22]*Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

[23]*See* SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms
in Disability Claims: Assessing the Credibility of an Individual's Statements*.

Treatment history is a proper consideration in evaluating credibility.[24]  A reasonable mind would expect a person with disabling back pain, even a person without financial resources, to seek some type of treatment.[25] Cheeter sought no treatment for 12 months after applying for SSI.[26]  When he sought treatment, treatment focused on cataract extraction.[27]

After cataract surgery, he complained about shortness of breath and auditory and visual hallucinations;[28] medical providers attributed his symptoms to cocaine use.[29]  Cheeter's chronic conditions — arthritis and hypertension— can be controlled with treatment.[30]  Conditions that can be controlled with treatment are not considered disabling.[31]  The lack of

---

[24]*Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) ("An ALJ may discount a claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment.").

[25]*Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (conservative course of treatment undermined claimant's claim of disabling back pain); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (complaints of disabling pain and functional limitations are inconsistent with the failure to take prescription pain medication or to seek regular medical treatment for symptoms); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) ("A failure to seek aggressive treatment is not suggestive of disabling back pain.").

[26]SSA record at p. 344 (Nov. 17, 2012, first medical visit after applying for SSI; his attorney sent him; he complained about persistent cough and back pain; medical provider ordered lab work, chest xray and eye exam).

[27]*Id*. at p. 325 (visit to eye doctor after cataract surgeries for eye glasses), p. 327 (cataract surgery on left eye), p. 329 (cataract surgery on right eye) & p. 344 (referral to eye doctor).

[28]*Id*. at p. 333.

[29]*Id*. at p. 350.

[30]*Id*. at p. 339 (prescribing low sodium diet, anti-hypertension and anti-inflammation medications, and blood pressure monitoring).

[31]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

treatment undermined Cheeter's credibility.

3.  **The ALJ accounted for mental impairment**.  Cheeter didn't base his claim on mental impairment, but he complained about depression during the hearing.[32]  It's impossible to identify the extent of his symptoms because he wasn't forthright during his mental diagnostic exam.

During the exam, he endorsed every suggested symptom, to include fictitious symptoms.[33]  He provided contradictory answers and withheld information.[34]  The ALJ properly relied on the exam in evaluating mental impairment.[35]

Before applying for SSI, Cheeter saw a mental health provider for a few months.  His provider diagnosed depression and alcohol abuse.[36]  The mental diagnostic examiner diagnosed malingering and substance abuse.[37]  The common diagnosis is substance abuse.  The diagnosis is important to Cheeter's claim because a person is not entitled to SSI if substance abuse is a contributing factor to a claimant's disability.[38]

Cheeter insists the ALJ should have discussed an earlier mental diagnostic

---

[32]SSA record at p. 52.

[33]*Id*. at p. 246.

[34]*Id*. at p. 247 (reporting that he was obviously withholding information about substance abuse and legal history).

[35]*O'Donnell v. Barnhart*,  318 F.3d 811, 817-18 (8th Cir. 2003) ("[A]n ALJ may discount a claimant's allegations if there is evidence that a claimant was a malinger or was exaggerating symptoms for financial gain.").

[36]SSA record at p. 237.

[37]*Id*. at p. 247.

[38]20 C.F.R. § 416.935(a); *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003).

exam,[39] but the exam occurred 30 months before Cheeter applied for SSI. The earlier report provides background information, but it doesn't not address the time period for which benefits were denied.  To the extent Cheeter has mental impairment, the ALJ required work with few mental demands.

4.  **Vocational evidence supports the decision**.  A claimant who can do his past work isn't disabled under social security law.[40]  Cheeter reported two past jobs: sawmill laborer and floor cleaner.[41]  A vocational expert classified sawmill laborer as medium work and floor cleaner as heavy work.[42]  By limiting Cheeter to medium work, the ALJ eliminated the possibility that Cheeter can work as a floor cleaner, and left open the question of whether he can work as a sawmill laborer.

When asked about available work, the vocational expert testified that a person limited to unskilled medium work can work as a sawmill laborer. The testimony shows Cheeter can do his past work, but in the written decision, the ALJ erroneously referred to Cheeter's past job as a sawmill worker. The mistake is significant because a sawmill worker is semi-skilled work versus a sawmill laborer which is unskilled work; the ALJ required unskilled work.  Cheeter contends the mistake requires a remand, but the mistake amounts to a scrivener's error with no practical effect on the outcome of the case.[43]

---

[39]SSA record at p. 181 (mental diagnostic exam for second application, conducted on Apr. 16, 2009).

[40]20 C.F.R. § 416.920(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").

[41]SSA record at p. 40 & 135.

[42]*Id*. at p. 54.

[43]*Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999) (deficiency in opinion-writing is insufficient reason to set aside administrative finding where deficiency had no practical effect on outcome); *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992) (arguable deficiency in opinion-writing doesn't require setting aside administrative finding if deficiency had no bearing on outcome).

The transcript of the hearing shows the ALJ used the wrong word, rather than the wrong job. The vocational expert classified Cheeter's past job as a sawmill laborer and testified that a person with Cheeter's limitations can work as a sawmill laborer. That means Cheeter can do his past work. The ALJ determined Cheeter can do his past work, but identified the wrong job in the written decision.

Even if the mistake rose to legal error, it would not change the result because the ALJ made an alternative determination: that Cheeter can do other work. The vocational expert identified kitchen helper and food prep worker as other available unskilled jobs.[44] Those jobs show work exists that Cheeter can do, regardless of whether jobs exists where he lives, whether a job vacancy exists, or whether he would be hired if he applied for work.[45] A reasonable mind will accept the evidence as adequate to show Cheeter can do his past work.

5**. The ALJ posed a proper hypothetical question**. Cheeter maintains the hypothetical question was defective. He relies on *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996), for the proposition that limiting him to unskilled work did not account for limitations in concentration, persistence, or pace. In *Newton*, the court remanded the ALJ's decision with instructions: "Any hypothetical question on remand should include [the claimant's] deficiencies of concentration, persistence, or pace so that the vocational expert might accurately determine his ability to work."[46]

Cheeter's argument flows from the ALJ's step three finding. At step three, the ALJ applied the special technique for mental impairment[47] and found moderate difficulties in concentration, persistence, or pace.[48] Cheeter

---

[44]SSA record at pp. 55-56.

[45]42 U.S.C. § 1382c(a)(3)(B).

[46]*Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996).

[47]20 C.F.R. § 416.920a.

[48]SSA record at p. 24.

maintains the hypothetical question was deficient because it omitted moderate difficulties in concentration, persistence, or pace.  There are two reasons the argument provides no basis for relief.

The first reason flows from different legal standards and different analyses.[49]  In step three, the ALJ uses a special technique to identify the need for additional evidence — like a mental diagnostic exam — and to consider the functional consequences of mental impairment.[50]  The ALJ usually consults a mental health professional.  In steps four and five, the ALJ uses a hypothetical question to determine whether the claimant can do his past work or other work that exists in the national economy.[51]  If the claimant has no exertional limitation, the ALJ applies the Medical-Vocational Guideline Rules.  If the claimant has a nonexertional impairment, the ALJ consults a vocational expert.  The standards and analyses for these steps are different.

The second reason is that since *Newton*, circuit authority has instructed that a hypothetical question is proper if it captures the "concrete consequences that flow from" the claimant's deficiencies.[52]  Limiting

_____

[49]*Lacroix v. Barnhart*, 465 F.3d 881, 888 n.3 (8th Cir. 2006) ("Each step in the disability determination entails a separate analysis and legal standard.").

[50]20 C.F.R. § 416.920a(a).

[51]20 C.F.R. § 416.920(a)(4).

[52]*Hulsey v. Astrue*, 622 F.3d 917, 925 (8th Cir. 2010) (hypothetical limiting claimant to "work of an unskilled nature involving only superficial interpersonal contact" adequately described concrete consequences of claimant's mental impairment; claimant's account of daily routine shows mental impairment doesn't prevent her from tending to her children or running a household); *England v. Astrue*, 490 F.3d 1017, 1023 (8th Cir. 2007) ("The hypothetical need not 'frame the claimant's impairments in the specific diagnostic terms used in the medical reports, but instead should capture the 'concrete consequences' of those impairments.'"); *Hillier v. Social Sec. Admin.*, 486 F.3d 359, 366 (8th Cir. 2007) ("Although the ALJ's hypothetical question did not expressly state [claimant] was functionally illiterate and had poor reading and writing skills, [his] low average to borderline intellectual functioning necessitated limiting [him] to simple,

Cheeter to unskilled work involving incidental interpersonal contact, tasks learned and performed by rote with few variables, little required judgment, and simple direct concrete supervision, captures the concrete consequences of mental impairment.

## Conclusion and Recommended Disposition

Substantial evidence supports the ALJ's decision because a reasonable mind will accept the evidence as adequate to support the decision. The record shows nothing preventing unskilled medium work. The ALJ made no harmful legal error. For these reasons, the undersigned magistrate judge recommends DENYING Cheeter's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

---

concrete work, either unskilled or semiskilled. By limiting [claimant] to simple, concrete work, the ALJ captured the practical consequences of [his] low average to borderline intellectual functioning."); *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (A "hypothetical question need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the 'concrete consequences' of those impairments;" excluding jobs involving the general public captured concrete consequences of mental impairment); *Roberts v. Apfel*, 222 F.3d 466, 471 (8th Cir. 2000) (assuming diminished reading ability and excluding jobs "requiring frequent, extensive or [constant] reading of written instructions" captured concrete consequences of borderline intellectual functioning); *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997) (hypothetical question failed to capture concrete consequences of medication side effects and inability to sit); *Pickney v. Chater*, 96 F.3d 294, 297 (8th Cir. 1996) (hypothetical question assuming no mental limitations did not capture concrete consequences of borderline intellectual functioning); *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996) (" While the ALJ's hypothetical question does not include the phrase "deficiencies of concentration, persistence, or pace," it does explicitly state both the mental conditions that cause these deficiencies and the concrete consequences that flow from them.").

Dated this 3rd day of September, 2015.

 

_____

United States Magistrate Judge